IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIM. NO. ELH-19-0054 |
| WILLIAM TYLER | : |

...oooOooo...

DEFENDANT'S SENTENCING MEMORANDUM **UNSEALED REDACTED** REQUESTING A SENTENCE OF PROBATION IN ZONE A OF THE SENTENCING GUIDELINES

Mr. Tyler is scheduled to be sentenced on Tuesday, January 28, 2020, at 10 AM. Nathans & Biddle LLP, by Robert W. Biddle, Esquire, counsel to the Defendant, William Tyler, hereby provides this Sentencing Memorandum **Unsealed** and **Redacted** in support of a variance sentence of probation.[1] For the reasons set forth below, and in the sealed and unsealed attachments to this sentencing memorandum, a sentence of incarceration is not called for based on the 18 USC §3553 factors, specifically the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public, and to provide the defendant with any needed training.

Mr. Tyler had a long career in law enforcement. PSR ¶'s 51 – 52. That career ended with his resignation due to the misconduct which led to his prosecution – he possessed a machine gun

---

[1] Portions of this unsealed sentencing memorandum contain redactions to remove information subject to a motion to seal.

1

and facilitated another officer's possession of a machine gun. PSR ¶'s 6 – 10. Although later he cooperated with the relevant federal and local investigations, initially he lied to investigating officers about the offense. PSR ¶9.

Mr. Tyler pleaded guilty to an information charging a Class C felony, unlawful possession of a machine gun, and the plea agreement set forth an agreed-upon Guideline recommendation of offense level 10, Plea Agreement ECF #8 ¶6. Offense Level 10 is in Zone B of the Guidelines, providing for a split sentence. However, the Probation Office concluded that the appropriate Guideline range is level 15, PSR ¶'s 15 – 24. Offense level 15 is in Zone D, providing for 18 – 24 months incarceration and no split sentence. The parties agree, despite the recommendation in the plea agreement, that this Guideline Range is correct. ¶ 57.

However, both parties will ask this Court to impose a variance sentence. The Government has informed the Court and the Defense that it intends to ask the Court to impose a sentence of one year and one day, which would be at the top end of the offense level 10 Guideline range referenced in the Plea Agreement. The Defense is asking the Court to impose a sentence of probation consistent with offense level 8, in Zone A of the Guidelines, mindful of the Fourth Circuit's view that "[t]he further the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *U.S. v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006). Both requested sentences will reflect a downward variance. A variance sentence will be reasonable, *Gall v. U.S.*, 552 U.S. 38, 46 (2007), and "sufficient, but not greater than necessary, to comply with the purposes" of sentencing, *see* 18 U.S.C. § 3553 (a).

There are several reasons why a downward variance sentence is appropriate. First, although not binding on the Court, the recommendation of the parties in the plea agreement that

2

the offense Guideline was level 10 and not higher expressed an understanding by the Government and the Defendant that in terms of the Guidelines the Defendant's misconduct was accurately expressed at that level and not higher. Had the Government believed that the offense conduct was under-represented by offense level 10, it could have sought an agreement to an upward departure or another adjustment to the offense which would have resulted in a higher offense level. It did not. That view of the parties should be considered by this Court in imposing sentence.

Second, although not normally or typically relevant to imposition of sentence, any period of incarceration, or an extended period of incarceration of over a month or two would have an unusually serious impact on the Defendant's family in this case. *See* Report Ex. 1 **SEALED**. The Court can and should consider these consequences when imposing sentence. 18 U.S.C. § 3553(a)(5); U.S.S.G. § 5H1.6. The U.S. Sentencing Commission's policy statement provides that a departure may be warranted "based on the loss of caretaking or financial support of the defendant's family" if: (1) a Guideline sentence will cause "substantial, direct, and specific loss of essential caretaking," (2) the loss of caretaking substantially exceeds the harm ordinarily incident to incarceration, (3) the defendant's caretaking is irreplaceable; and (4) the departure will address the loss of caretaking. U.S.S.G. § 5H1.6. Courts may consider family circumstances in departing downward in the appropriate case. *See U.S. v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008); *U.S. v. Lehmann*, 513 F.3d 805 (8th Cir. 2008). Given this Defendant's role in his family, and the condition of his family members, and the other mitigating circumstances in the record, a variance on this basis as well as others is warranted in the record.

3

Third, though not ordinarily relevant, Mr. Tyler's employment record is relevant to his sentence. He has been thriving in his new job after resigning from the Taneytown Police Department. Ex. 22 (letter from David J. Smith). Even a short period of incarceration may impact Mr. Tyler's long-term ability to obtain and maintain gainful employment and to be the productive member of society that he has thus far been. The effect of incarceration on the ability to obtain employment due to stigma is well documented. See Amy L. Solomon, *In Search of a Job: Criminal Records as Barriers to Employment*, National Institute of Justice. A 2003 study published in the American Journal of Sociology found that white job applicants with a criminal record received callbacks 17 percent of the time, compared with 34 percent of the time for white applicants with no criminal record – a 50 percent decrease in the callback rate. Devah Pager, *The Mark of a Criminal Record*, AMERICAN JOURNAL OF SOCIOLOGY (2003). The need for Mr. Tyler to be employed and support his family relates directly to the impact incarceration or extended incarceration will have on his family. *See* Ex. 1.

Fourth, **REDACTED**

Fifth, in order to advance the purposes of sentencing, it is not necessary to incarcerate Mr. Tyler, or if it is necessary, a sentence of only a month or two should be imposed. Mr. Tyler's statement Ex. 24 shows that he understands that he committed a serious crime, that he already and will for the rest of his life suffer in unique ways as a result of his crime, and that a period of incarceration, or a period of incarceration more than a few months, is not required to protect the public, deter him from further misconduct, and to deter other law enforcement officers from committing the same crime. *See U.S. v. Anderson*, 533 F.3d 623 (8th Cir. 2008)(affirming

4

downward variance based on unique atypical punishment arising from a conviction); *U.S. v. Grossman*, 513 F.3d 592 (6th Cir. 2008).

Additional support for this basis for a variance is set forth in the numerous character letters providing many examples of Mr. Tyler's mentoring and community leadership through athletic coaching. *See* Ex.'s 7-23, 25-29. The basis for the variance addressed in the letters is not that Mr. Tyler is a good man despite his offense, although he is; it is that the letters show that incarceration is not necessary to prevent further crimes by the Defendant given the other qualities of his character apparent in the character letters.

For all the reasons set forth above, we respectfully request that this Court enter a variance sentence below the recommended Guidelines range of 18 – 24 months, with reference to the mitigation presented to this Court. *See U.S. v. Provance*, 944 F.3d 213 (4th Cir. 2019); *U.S. v. Ross*, 912 F.3d 740 (4th Cir. 2019).

Respectfully submitted,

/s/

Robert W. Biddle, Esq.
Nathans & Biddle LLP
120 East Baltimore Street, Suite 1800
Baltimore, Maryland 21202
410-783-0272

Dated: January 21, 2020

5

William E. Tyler Exhibits – Sealed and Unsealed

1. Exhibit 1 **Sealed** – Report To Be Filed Under Seal
2. Exhibit 2 Unsealed – Lori James-Townes, MSW, LCSW-C CV
3. Exhibit 3 **Sealed** – Letter To Be Filed Under Seal
4. Exhibit 4 **Sealed** – Letter To Be Filed Under Seal
5. Exhibit 5 **Sealed** – Report To Be Filed Under Seal
6. Exhibit 6 Unsealed – Article – It's Time We Consider The Best Interest of the Child
7. Exhibit 7 Unsealed – Letter from Carolyn Aberts
8. Exhibit 8 Unsealed – Letter from Molly Cochran
9. Exhibit 9 Unsealed – Letter from Mike Koons
10. Exhibit 10 Unsealed – Letter 1 from James Culver and Sandra Culver
11. Exhibit 11 Unsealed – Letter 2 from Jim & Sandy Culver
12. Exhibit 12 Unsealed – Letter from Randy Gallagher
13. Exhibit 13 Unsealed – Letter from Ryan Green
14. Exhibit 14 Unsealed – Letter from Danielle Perella-Green
15. Exhibit 15 Unsealed – Letter from Bill Hyson
16. Exhibit 16 Unsealed – Letter from Kimani Jones
17. Exhibit 17 Unsealed – Letter from Candace Miller
18. Exhibit 18 Unsealed – Letter from Michael F. Quealy
19. Exhibit 19 Unsealed – Letter from Josh and Lacy Ramsburg
20. Exhibit 20 Unsealed – Letter from Joshua Rutter
21. Exhibit 21 Unsealed – Letter from James L. Schumacher
22. Exhibit 22 Unsealed – Letter from David J. Smith
23. Exhibit 23 Unsealed – Letter from David N. Smith
24. Exhibit 24 Unsealed – Letter from W.E. Tyler
25. Exhibit 25 Unsealed – Letter from Clayton Vleck
26. Exhibit 26 Unsealed – Letter from Ed Williar
27. Exhibit 27 Unsealed – Letter from Minor A
28. Exhibit 28 Unsealed – Letter from Minor B
29. Exhibit 29 Unsealed – Letter from Minor C

## CERTIFICATE OF SERVICE

It is stated on this 21ST day of January, 2020, this notice was served by efiling on counsel of record.

/s/
_____
Robert W. Biddle